STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>INDUSTRIAL WIND ACTION CORP, a New Hampshire corporation; JONATHAN S. LINOWES, an individual,<br><br>Defendants. | Case No.: 2:10-cv-0601<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Righthaven LLC ("Righthaven") complains as follows against Industrial Wind Action Corp ("IWA"), a New Hampshire corporation and Jonathan Linowes, an individual ("Mr. Linowes"; collectively with IWA, "Defendants"), on information and belief:

### NATURE OF ACTION

1.   This is an action for copyright infringement pursuant to 17 U.S.C. §501.

1

# PARTIES

2. Righthaven is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Righthaven is, and has been at all times relevant to this lawsuit, in good standing with the Secretary of State of Nevada.

4. IWA is, and has been at all times relevant to this lawsuit, a New Hampshire corporation with its principal place of business in New Hampshire.

5. Mr. Linowes is, and has been at all times relevant to this lawsuit, an individual doing business as Parkhill Technology Group, LLC.

6. On or about March 6, 2006, a business entity named Parkhill Technology Group, LLC was organized as a New Hampshire limited-liability company.

7. As of April 26, 2010, Parkhill Technology Group, LLC's business entity status is not in good standing with the New Hampshire Secretary of State.

8. As of April 26, 2010, Parkhill Technology Group, LLC is no longer a validly subsisting business entity recognized by the New Hampshire Secretary of State.

9. A print-out of the New Hampshire Secretary of State business entity database, attached hereto as Exhibit 1, demonstrates the lack of good standing for the business entity formerly formed as Parkhill Technology Group, LLC.

10. Despite Parkhill Technology Group, LLC lack of good standing, the owner of the business entity formally formed as Parkhill Technology Group, LLC, at all times relevant, continued to conduct business under said entity's name.

11. At all times relevant, Mr. Linowes was and is the owner associated with the business formally formed as Parkhill Technology Group, LLC.

# JURISDICTION

12. This Court has original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338(a).

13. The Defendants purposefully direct activities at Nevada residents, which activities have resulted in the copyright infringement alleged herein.

14. The Defendants purposefully direct and effectuate the unauthorized reproduction of Righthaven-owned copyrighted works at www.windaction.org (the "Website").

15. The Defendants' unauthorized reproductions of Righthaven-owned copyrighted works found on the Website are purposefully targeted to Nevada residents.

16. The business entity formally formed as Parkhill Technology Group, LLC, is the owner and registrant of the Website.

17. Mr. Linowes is, and has been at all times relevant to this lawsuit, the administrative and technical agent for the Website.

18. The Defendants copied, on an unauthorized basis, the literary work entitled "Windmill plan unites neighbors," attached hereto as Exhibit 2 (the "Windmill Article"), from a source emanating from Nevada.

19. On or about March 21, 2010, the Defendants displayed and continue to display the Windmill Article on the Website.

20. The Defendants' display of the Windmill Article was and is purposefully directed at Nevada residents.

21. The Defendants copied, on an unauthorized basis, the literary work entitled "Green jobs," attached hereto as Exhibit 3 (the "Green Jobs Article"), from a source emanating from Nevada.

22. On or about February 11, 2010, the Defendants displayed and continue to display the Green Jobs Article on the Website.

23. The Defendants' display of the Green Jobs Article was and is purposefully directed at Nevada residents.

24. The Defendants' copied, on an unauthorized basis, the literary work entitled "Searchlight residents grill Duke Energy representatives about wind farm," attached hereto as Exhibit4 (the "Searchlight Article"), from a source emanating from Nevada.

25. On or about June 26, 2009, the Defendants displayed and continue to display the Searchlight Article on the Website.

26. The Defendants' display of the Searchlight Article was and is purposefully directed at Nevada residents.

27. The Defendants' copied, on an unauthorized basis, the literary work entitled "Wind farm floated in state," attached hereto as Exhibit 5 (the "Farm Floated Article"), from a source emanating from Nevada.

28. On or about December 19, 2008, the Defendants displayed and continue to display the Farm Floated Article on the Website.

29. The Defendants' display of the Farm Floated Article was and is purposefully directed at Nevada residents.

30. The Defendants copied, on an unauthorized basis, the literary work entitled "BLM releases draft EA for local wind farm," attached hereto as Exhibit 6 (the "BLM Releases Article"), from a source emanating from Nevada.

31. On or about December 17, 2009, the Defendants displayed and continue to display the BLM Releases Article on the Website.

32. The Defendants' display of the BLM Releases Article was and is purposefully directed at Nevada residents.

33. The Defendants copied, on an unauthorized basis, the literary work entitled "BLM approves transmission line," attached hereto as Exhibit 7 (the "Transmission Line Article"), from a source emanating from Nevada.

34. On or about August 8, 2008, the Defendants displayed and continue to display the Transmission Line Article on the Website.

35. The Defendants' display of the Transmission Line Article was and is purposefully directed at Nevada residents.

36. The Defendants copied, on an unauthorized basis, the literary work entitled "Wind farm developer to ride out financial woes," attached hereto as Exhibit 8 (the "Financial Woes Article"), from a source emanating from Nevada.

37. On or about February 18, 2009, the Defendants displayed and continue to display the Financial Woes Article on the Website.

38. The Defendants' display of the Financial Woes Article was and is purposefully directed at Nevada residents.

39. The Defendants copied, on an unauthorized basis, the literary work entitled "Wind farm idea aired," attached hereto as Exhibit9 (the "Farm Idea Article"), from a source emanating from Nevada.

40. On or about February 9, 2008, the Defendants displayed and continue to display the Farm Idea Article on the Website.

41. The Defendants' display of the Farm Idea Article was and is purposefully directed at Nevada residents.

42. The Defendants copied, on an unauthorized basis, the literary work entitled "BLM studying seven wind farm proposals for White Pine County," attached hereto as Exhibit 10 (the "BLM Proposals Article"), from a source emanating from Nevada.

43. On or about January 16, 2008, the Defendants displayed and continue to display the BLM Proposals Article on the Website.

44. The Defendants' display of the BLM Proposals Article was and is purposefully directed at Nevada residents.

45. The Defendants copied, on an unauthorized basis, the literary work entitled "Military will not object to huge Nevada wind farm," attached hereto as Exhibit 11 (the "Military Article"), from a source emanating from Nevada.

46. On or about November 14, 2007, the Defendants displayed and continue to display the Military Article on the Website.

47. The Defendants' display of the Military Article was and is purposefully directed at Nevada residents.

48. The Defendants copied, on an unauthorized basis, the literary work entitled "After four years, Spring Valley Wind project nears EA review," attached hereto as Exhibit12 (the "Spring Valley Article"), from a source emanating from Nevada.

49. On or about November 4, 2007, the Defendants displayed and continue to display the Spring Valley Article on the Website.

50. The Defendants' display of the Spring Valley Article was and is purposefully directed at Nevada residents.

51. The Defendants copied, on an unauthorized basis, the literary work entitled "Wind-wind' plan boosts local agency," attached hereto as Exhibit 13 (the "Wind-wind Article"), from a source emanating from Nevada.

52. On or about March 26, 2007, the Defendants displayed and continue to display the Wind-wind Article on the Website.

53. The Defendants' display of the Wind-wind Article was and is purposefully directed at Nevada residents.

54. IWA's contacts with Nevada are systematic and continuous because IWA, according to IWA's representations on IWA's Website, has "selectively culled from sources all over the world" and republished, on a continuing basis since at least 2006, no fewer than seventy-five (75) news articles concerning wind farms and wind energy in Nevada, which articles were originally published by persons or entities other than IWA.

55. IWA's contacts with Nevada are systematic and continuous because IWA has, in IWA's own words, "selectively culled" and republished, on a continuing basis since at least 2006, no fewer than fifty (50) news articles emanating from sources in Nevada, which sources include periodicals published in localities including Carson City, Douglas County, Elko, Ely, Las Vegas, Lincoln County, Pahrump, Reno, and Sparks.

56. IWA's contacts with Nevada are systematic and continuous because IWA provides functionality at the Website to allow users of the Website specifically to locate and read news articles concerning Nevada.

57. IWA's contacts with Nevada are systematic and continuous because IWA provides functionality at the Website to allow users of the Website to request electronic news feeds of new news articles, selectively culled by IWA, specifically relating to Nevada.

**VENUE**

58. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to the claim for relief are situated in Nevada.

59. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(b)(3) and § 1400(a), because IWA may be found in Nevada.

60. The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. §1391(c), because a IWA is subject to personal jurisdiction in Nevada.

**FACTS**

61. Righthaven is the copyright owner of the literary work entitled "Commissioners grant special use permit, variance for Spring Valley wind farm" (the "Work"), attached hereto as Exhibit 14.

62. The Work was originally published on January 20, 2010.

63. The Work constitutes copyrightable subject matter, pursuant to 17 U.S.C. §102(a)(1).

64. On April 12, 2010, 2010, the United States Copyright Office (the "USCO") granted Righthaven the registration to the Work, copyright registration number TX0007125687 (the "Registration") and attached hereto as Exhibit 15 is evidence of the Registration in the form of a printout of the official USCO database record depicting the occurrence of the Registration.

65. Mr. Linowes obtained ownership of the Website for the benefit of IWA.

66. At all times relevant, IWA had and has maintained beneficial control of the Website.

67. At all times relevant, Mr. Linowes acted and acts as an agent of IWA, authorized to provide technical, maintenance and administrative support on the Website.

68. At all times relevant, IWA directed and directs Mr. Linowes to add to, delete from and arrange content on the Website.

7

69. No later than March 22, 2010, IWA reproduced an unauthorized copy of the Work (the "Infringement"), attached hereto as Exhibit 16, on the Website.

70. No later than March 22, 2010, IWA directed Mr. Linowes to reproduce and display the Infringement on the Website.

71. No later than March 22, 2010, Mr. Linowes reproduced and displayed the Infringement on the Website.

72. The Defendants did not seek permission, in any manner, to reproduce, display, or otherwise exploit the Work.

73. The Defendants were not granted permission, in any manner, to reproduce, display, or otherwise exploit the Work.

## CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT

74. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 73 above.

75. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. §106(1).

76. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. §106(2).

77. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. §106(3).

78. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. §106(5).

79. The Defendants reproduced the Work, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(1).

80. The Defendants created an unauthorized derivative of the Work, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(2).

81. The Defendants distributes unauthorized reproductions of the Work via the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(3).

82. The Defendants publicly display an unauthorized reproduction of the Work at the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. §106(5).

83. IWA has willfully engaged in the copyright infringement of the Work.

84. Mr. Linowes has willfully engaged in the copyright infringement of the Work.

85. The Defendants' acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

86. Unless the Defendants are preliminarily and permanently enjoined from further infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further infringement by the Defendants of the Work, pursuant to 17 U.S.C. §502.

## **PRAYER FOR RELIEF**

Righthaven requests that this Court grant Righthaven's claim for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain IWA, and IWA's officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under IWA, Mr. Linowes, and Mr. Linowes' agents, servants, employees, attorneys, related companies, partners, and all persons acting for, by, with, through, or under Mr. Linowes, from directly or indirectly infringing the Work by reproducing the Work, preparing derivative works based on the Work, distributing the Work to the public, and/or displaying the Work, or ordering, directing, participating in, or assisting in any such activity;

2. Direct the Defendants to preserve, retain, and deliver to Righthaven in hard copies or electronic copies:

    a. All evidence and documentation relating in any way to the Defendants' use of the Work, in any form, including, without limitation, all such evidence and documentation relating to the Website;

   b. All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom the Defendants have communicated regarding the Defendants' use of the Work; and

   c. All financial evidence and documentation relating to the Defendants' use of the Work;

 3. Award Righthaven statutory damages for the willful infringement of the Work, pursuant to 17 U.S.C. §504(c);

 4. Award Righthaven pre- and post-judgment interest in accordance with applicable law; and

 5. Grant Righthaven such other relief as this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Righthaven requests a trial by jury pursuant to Fed.R.Civ.P. 38.

Dated this twenty-sixth day of April, 2010.

          RIGHTHAVEN LLC

          By: /s/ J. Charles Coons
          STEVEN A. GIBSON, ESQ.
          Nevada Bar No. 6656
          J. CHARLES COONS, ESQ.
          Nevada Bar No. 10553
          9960 West Cheyenne Avenue, Suite 210
          Las Vegas, Nevada 89129-7701
          Attorneys for Plaintiff